**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| RONNIE HUTCHENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:20CV1124 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant.[1] | ) |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Ronnie Hutchens, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; see also Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum); Docket Entry 21 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 346-54), alleging a disability onset date of January 1, 2015 (see Tr. 346).  Upon denial of that application initially (Tr. 117-29, 169-72), and on reconsideration (Tr. 130-43, 180-89), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 190-92).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 81-116.)[2]  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 144-57.)  The Appeals Council thereafter granted Plaintiff's request for review (Tr. 163-68, 288-89, 474-77), and remanded the matter 1) for a new hearing before a Constitutionally-appointed ALJ, and 2) for evaluation of opinion evidence from the state agency medical consultant, the consultative medical examiner, Plaintiff's fiancée, and Plaintiff's employer (see Tr. 165-67).

A different ALJ convened a new hearing, attended by Plaintiff, his attorney, and a VE.  (Tr. 42-79).  Following that hearing, the ALJ issued a ruling deeming Plaintiff not disabled (Tr. 12-34).[3] The Appeals Council later denied Plaintiff's request for review

---

[2] At the conclusion of Plaintiff's testimony, the ALJ declined to call the VE to testify.  (See Tr. 113.)

[3] The ALJ mistakenly described Plaintiff's alleged onset date as January 1, 201**4** (Tr. 15); however, that typographical error lacks material consequence, as eligibility for SSI begins in the month following a claimant's application date, see 20 C.F.R. § 416.335, and the ALJ's non-disability ruling covered the time period from Plaintiff's application date on August 20, 2015, to April 10, 2020, the date of the ALJ's decision (see Tr. 34).

Case 1:20-cv-01124-CCE-LPA   Document 22   Filed 12/09/21   Page 2 of 33

(Tr. 1-6, 342-45, 497-98), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings, later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since August 20, 2015, the application date.

. . .

2. [Plaintiff] has the following severe impairments: diabetes mellitus, type 1, with diabetic neuropathy; obesity; residual effects of a fracture of the left ankle, residual effects of a fracture of the left little finger, and depressive disorder.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform a range of sedentary work . . . . Specifically, he can frequently lift and carry 10 pounds, can sit 6 out of 8 hours, stand and walk 2 out of 8 hours, can have occasional use of left and right foot controls, no limit with hand controls, no limit in his ability to reach overhead right and left, no limit in his ability to reach in all directions both right and left, no limit in his ability to handle, has no limit in his ability to finger with the right hand and can frequently finger with the left, and has no limit in ability to feel both right and left. He can frequently engage in balancing, and stooping, can occasionally kneel, crouch, crawl, and climb stairs and ramps, but cannot climb ropes, ladders, or scaffolds. He can never be exposed to unprotected heights but can have occasional exposure to moving machinery, no

3

limit in operating a motor vehicle, nor any limit
in his exposure to extreme weather, extreme cold or
heat, vibration, loud noise, or to fumes, odors,
gases, poor ventilation, or other pulmonary
irritants. He is able to perform simple, routine,
repetitive tasks, and whose [sic] time off task can
be compensated with his ability to perform simple,
routine, repetitive tasks.

. . .

5.    [Plaintiff] is unable to perform any past relevant
      work.

. . .

9.    Considering [Plaintiff]'s age, education, work
      experience, and residual functional capacity, there
      are jobs that exist in significant numbers in the
      national economy that [he] can perform.

. . .

10.   [Plaintiff] has not been under a disability, as
      defined in the . . . Act, since August 20, 2015,
      the date the application was filed.

(Tr. 17-34 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of
[the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

4

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

5

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in

---

[4] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantially identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

7

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

---

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three
(continued...)

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's decision violates *Mascio v. Colvin*[, 780 F.3d 632 (4th Cir. 2015)]" (Docket Entry 15 at 4 (bold font omitted)); and

2) "[t]he structure of SSA is constitutionally invalid" (<u>id.</u> at 7 (bold font omitted); <u>see also</u> Docket Entry 21 at 1-17);

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (<u>See</u> Docket Entry 17 at 6-24.)

## 1. **Mascio**

In Plaintiff's first assignment of error, he maintains that "[t]he ALJ's decision violates *Mascio*" (Docket Entry 15 at 4 (bold font omitted)), in that "the ALJ found that [Plaintiff] ha[d] a moderate limitation with regards to concentrating, persisting or maintaining pace [('CPP')]" (<u>id.</u> (citing Tr. 23)), but "did not account for [Plaintiff's] limitations in CPP by restricting him to . . . simple, routine, repetitive tasks [('SRRTs')]" in the RFC (<u>id.</u> at 5 (referencing Tr. 24)). According to Plaintiff, <u>Mascio</u> held that "'an ALJ does not account for a claimant's limitations in

---

[7](...continued)
in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.,</u> <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,'" because "'the ability to perform simple tasks differs from the ability to stay on task[, and o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Id. (quoting Mascio, 780 F.3d at 638) (some internal quotation marks omitted).) Plaintiff concedes that a moderate deficit in CPP "may not automatically require an RFC that imposes additional limitations," but points out that "the district courts, including this [Court], have repeatedly held that the ALJ must at least provide a sufficient explanation in the decision to allow the court to determine why no limitations as to [CPP] were included in the RFC." (Id. (citing Scruggs v. Colvin, No. 3:14CV466, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (unpublished), Reinhardt v. Colvin, No. 3:14CV488, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished), Raynor v. Colvin, No. 5:14CV271, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (unpublished), and Salmon v. Colvin, No. 1:12CV1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished) (Biggs, J.)).) For the reasons that follow, those assertions entitle Plaintiff to no relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]," Mascio, 780 F.3d at 638. However, as the Fourth Circuit recently affirmed, Mascio held "that an ALJ cannot

summarily 'account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,' . . . [b]ut did <u>not</u> impose a categorical rule that requires an ALJ to <u>always</u> include moderate limitations in [CPP] as a specific limitation in the RFC." <u>Shinaberry v. Saul</u>, 952 F.3d 113, 121 (4th Cir. 2020) (emphasis added). As a neighboring district court has explained:

> <u>Mascio</u> does not broadly dictate that a claimant's moderate impairment in [CPP] <u>always</u> translates into a limitation in the RFC. Rather, <u>Mascio</u> underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

<u>Jones v. Colvin</u>, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added). Here, the ALJ's decision provides a sufficient explanation as to why the RFC's restrictions to SRRTs (Tr. 24) adequately accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ pointed out at step three of the SEP that Plaintiff remained able to engage in a variety of activities that demonstrated an ability to persist at simple tasks, such as drive, shop in stores, perform household chores, use[] his phone to do online shopping, watch TV, play video games, and manage his own

11

finances. (See Tr. 23-24.) In the ALJ's later discussion of the medical evidence, he observed that "[t]here [we]re [] indications [] in the record that [Plaintiff] continued to perform jobs with unrecorded earnings[ which] suggest[ed] a level of continuing functional capacity inconsistent with [Plaintiff]'s statements of . . . mental limitations associated with his conditions during his hearing testimonies." (Tr. 32 (citing Tr. 528, 578).)

Second, the ALJ's discussion of the opinion evidence supports his conclusion that, despite moderate limitation in CPP (see Tr. 23), Plaintiff remained capable of performing SRRTs (see Tr. 24). In that regard, the ALJ accorded "partial weight" to the opinion of consultative psychological examiner Dr. Chad C. Ritterspach (Tr. 30, 32) that Plaintiff's "ability to <u>sustain</u> attention to perform simple repetitive tasks appear[ed] <u>mildly</u> impaired" (Tr. 565 (emphasis added)).[8] Consistent with the ALJ's assignment of <u>partial</u> weight to Dr. Ritterspach's opinion, found Plaintiff <u>moderately</u> limited in CPP (see Tr. 23),[9] but ultimately concluded that Plaintiff's "time off task c[ould] be compensated with his ability to perform [SRRTs]" (Tr. 24). The ALJ's evaluation and

_____

[8] The ALJ explained that he accorded "partial weight" to Dr. Ritterspach's opinion because he 1) "use[d] vague terms rather than identifying specific functional limitations associated with [Plaintiff]'s mental impairments," and 2) did not offer "a prognosis concerning the effect [ Plaintiff] receiving mental health treatment would have on his mental functioning." (Tr. 30.)

[9] In finding Plaintiff moderately limited in CPP, the ALJ gave the benefit of the doubt to Plaintiff's statement "that his concentration 'can be a problem'" (Tr. 23 (citing Tr. 565)), as well as the report of Plaintiff's fiancée that Plaintiff's "fluctuating blood sugar levels c[ould] affect his ability to pay attention and concentrate" (id. (citing Tr. 411)).

12

weighing of Dr. Ritterspach's above-quoted opinion thus sufficed under Mascio to explain the ALJ's conclusion that, despite moderate limitation in CPP (see Tr. 23), Plaintiff remained capable of performing SRRTs (see Tr. 24). See Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where ALJ relied on opinions of consultative examiner and state agency psychological consultant that, notwithstanding moderate deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).

Third, the ALJ made the following observations regarding the medical evidence of record:

- a primary care treatment note in January of 2015 "showing minimal symptoms and complaints, [Plaintiff]'s readiness to work, and the gap in treatment following th[at] appointment [wa]s inconsistent with [Plaintiff]'s allegations of debilitating and disabling symptoms existing at th[at] time" (Tr. 26; see also Tr. 504-06);

- a follow-up visit in September 2016 "noted [Plaintiff]'s complaints about having difficulty sleeping, but denying experiencing anxiety, depression, feeling confused, delusions, or either compulsive or impulsive behaviors" (Tr. 27; see also Tr. 532-34);

- subsequent appointments in April and October 2019 recorded intact judgment and insight as well as normal mood and affect (Tr. 29; see also Tr. 581, 588-89); and

- at an office visit in January 2020, Plaintiff "reported that he 'fe[lt] stable without new complaints'" (Tr. 30; see also Tr. 642), and displayed intact judgment and insight as well as normal mood, thoughts, and affect (see Tr. 31; see also Tr. 644).

13

That evidence further explains why the ALJ's limitation to SRRTs sufficiently accounts for Plaintiff's moderate limitation in CPP.

Put simply, Plaintiff's first issue on review falls short.

## 2. Constitutionality of SSA

In Plaintiff's second and final assignment of error, he contends that "[t]he structure of SSA is constitutionally invalid." (Docket Entry 15 at 7 (bold font omitted); see also Docket Entry 21 at 1-17.) In particular, Plaintiff asserts that "[t]he United States Supreme Court has held that it is unconstitutional for an executive agency to be led by a single individual who serves for a longer term than the President and who can only be removed from his position for cause." (Docket Entry 15 at 7 (citing Seila Law LLC v. Consumer Fin. Prot. Bureau, 591 U.S. ___, ___, 140 S. Ct. 2183, 2197 (2020)).) According to Plaintiff, the "constitutionally invalid structure of the [Consumer Financial Protection Bureau ('CFPB')] is identical to that of the SSA," in that "[t]he Commissioner of SSA is the singular head of the [SSA], serves for a six-year term, and cannot be removed by the President except for cause ('neglect of duty or malfeasance in office')." (Id. at 8 (citing 42 U.S.C. § 902(a)(3)).) Plaintiff further maintains that "[t]he ALJ's delegation of authority in this case came from [then-Commissioner] Andrew Saul and is therefore constitutionally defective" (id. (citing Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-0-2(A))), as well as that "the ALJ decided

14

this case under regulations promulgated by [Commissioner] Saul when [he] had no constitutional authority to issue those rules" (<u>id.</u>). Those arguments ultimately fail as a matter of law.

As an initial matter, the Acting Commissioner concedes that "the [SSA] provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers . . . to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Docket Entry 17 at 6-7 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protections, 2021 WL 2981542 (July 8, 2021) ("OLC Op").) However, the Acting Commissioner notes that, "even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused him harm." (<u>Id.</u> at 7 (citing <u>Collins v. Yellen</u>, ___ U.S. ___, ___-___, 141 S. Ct. 1761, 1787-89 (2021)).) According to the Acting Commissioner, "Plaintiff cannot show the required nexus [under <u>Collins</u>] between Section 902(a)(3)'s removal restriction and the denial of his benefits claim" (<u>id.</u> at 8 (bold font, capitalization, and single-spacing omitted)), because 1) "[t]he deciding ALJ served under a ratification of his appointment by an Acting Commissioner not subject to tenure protection" (<u>id.</u> at 9 (bold font, capitalization,

15

and single-spacing omitted)), and 2) "Plaintiff cannot show that the Commissioner's statutory tenure protection affected the deciding ALJ's determination of [Plaintiff's] claim" (id. at 11 (bold font, capitalization, and single-spacing omitted)). For the reasons that follow, both of the Acting Commissioner's arguments have merit.

a.  <u>Acting Commissioner Removable at Will</u>

The Acting Commissioner offers the following argument regarding the President's power to remove an Acting Commissioner of the SSA at will:

> The ALJ who adjudicated Plaintiff's claim on April 10, 20[2]0, held office under an appointment legally ratified in July 2018 by then-Acting Commissioner [Nancy] Berryhill. For her part, Ms. Berryhill had been designated to serve as Acting Commissioner in April 2018, upon former President Trump's nomination of Andrew Saul to serve as Commissioner.[FN*]  In her Acting capacity, she enjoyed no statutory tenure protection. *See* 42 U.S.C. § 902(b)(4); *Collins*, 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain "plain language to take [that power] away."); *see also United States v. Eaton*, 169 U.S. 331, 343 (1898) (holding that where a "subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official"); *accord Collins*, 141 S. Ct. at 1782 (FHFA Acting Director removable at will because relevant "subsection does not include any removal restriction. Nor does it crossreference the earlier restriction on the removal of a confirmed Director.").[FN**]  Thus, Ms. Berryhill was removable at will, and her ratification of the deciding ALJ's appointment accordingly severed any conceivable nexus between Section 902(a)(3)'s tenure protection for a confirmed Commissioner and any alleged harm to Plaintiff.

16

[FN*] Under the Federal Vacancies Reform Act (FRVA), 5 U.S.C. § 3346(a)(1), even if Ms. Berryhill's initial eligibility to serve as Acting Commissioner previously expired, then-President Trump nominated Andrew Saul for Commissioner in April 2018, such that Ms. Berryhill once again was eligible to serve as Acting Commissioner. The FVRA "incorporates a spring-back provision, which permits the acting officer to begin performing the functions and duties of the vacant office again upon the submissions of a nomination, even if the 210-day period expired before that nomination was submitted." 23 O.L.C 60, 68 (1999), 1999 WL 1262050, at *8. That provision establishes a new period of acting service following a first or second nomination for the office. *See* 5 U.S.C. § 3346(a)(2), (b). Ms. Berryhill's eligibility following Mr. Saul's nomination was, therefore, valid — and it remained in force on July 16, 2018, the date [Acting Commissioner] Berryhill ratified the appointments of the [SSA]'s ALJs, including the ALJ who later adjudicated Plaintiff's claim. <u>See</u> Social Security Ruling [] 19-1p[, <u>Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council</u>, 2019 WL 1324866 (Mar. 15, 2019)].

[FN**] The [] Act describes the "Commissioner of Social Security" as an individual "appointed by the President" and confirmed by the Senate. 42 U.S.C. § 902(a). The Commissioner is appointed to a term of six years, and "[a]n individual serving in the office of Commissioner may be removed from office" only for cause. 42 U.S.C. §902(a)(3). In a separate subsection, the statute addresses the "Deputy Commissioner of Social Security," who enjoys no removal protection, and is deemed the "Acting Commissioner" during the "absence or disability of the Commissioner . . . unless the President designates another officer of the Government as Acting Commissioner." 42 U.S.C. § 902(b)(2), (4)[; *c]ompare*, 42 U.S.C. § 902(c)(1) (providing that the Chief Actuary is removable only for cause). In the absence of plain statutory text providing tenure to an Acting Commissioner — which would be "a singular anomaly in all of administrative law," *Rop v. Fed. Hous. Fin. Agency*, 485 F. Supp. 3d 900, 938 (W.D. Mich. 2020) — a person serving temporarily in an Acting capacity is removable at will. *See Collins*, 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away.'"); *accord Swan v.*

17

> *Clinton*, 100 F.3d 973, 987 (D.C. Cir. 1996) (holding
> removal protection did not apply to "holdover" officials
> since "if the President cannot remove holdover officials
> . . . then holdover members could conceivably remain in
> office for substantial, indeed unlimited, periods of
> time").

(Docket Entry 17 at 9-11.)

In response, Plaintiff contends that his "argument has nothing whatsoever to do with who appointed the ALJ or the Appeals Council judges in this case," as his argument "is not an Appointments Clause challenge," but rather "an entirely distinct one which contests . . . the delegation of authority under which [the ALJs and Appeals Council judges] adjudicated . . . this case." (Docket Entry 21 at 6-7.) According to Plaintiff, "[w]holly apart from all of the foregoing, every court which has thus far ruled upon the issue has indicated that even the Acting Commissioner . . . enjoyed removal protection under the statute for the time period of their temporary appointment." (Id. at 7 (citing Sylvia A. v. Kijakazi, No. 5:21CV76, 2021 WL 4692293, at *3 (N.D. Tex. Sept. 13, 2021) (unpublished), recommendation adopted, 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021) (unpublished), Albert v. Kijakazi, No. 1:21CV4, 2021 WL 3424268, at *3 (D. Alaska Aug. 5, 2021) (unpublished), Tafoya v. Kijakazi, No. 21CV871, 2021 WL 3269640, at *5 (D. Colo. July 29, 2021) (unpublished), and Dante v. Saul, Civ. No. 20-702, 2021 WL 2936576, at *5 (D.N.M. July 13, 2021) (unpublished)).)

The statutory language of Section 902 belies Plaintiff's position for three reasons. To begin, comparison of the language

18

in the portion of Section 902 authorizing the Commissioner with the portion authorizing the Deputy Commissioner (who serves as <u>Acting Commissioner</u> in the Commissioner's absence, disability, or vacancy) supports the Acting Commissioner's position that the President can remove an Acting Commissioner at will.  The applicable portion of that statute provides as follows:

(a) Commissioner of Social Security

(1)  There  shall  be  .  .  .  a  Commissioner  of  Social Security . . . who shall be appointed by the President, by and with the advice and consent of the Senate.

. . .

(3) The Commissioner shall be appointed for a term of 6 years . . . .  <u>An individual serving in the office of Commissioner may be removed from office only pursuant to a  finding  by  the  President  of  neglect  of  duty  or malfeasance in office</u>.

. . .

(b) Deputy Commissioner of Social Security

(1) There shall be . . . a Deputy Commissioner of Social Security . . . who shall be appointed by the President, by and with the advice and consent of the Senate.

(2) The Deputy Commissioner shall be appointed for a term of 6 years . . . .  In any case in which a successor does not take office at the end of a Deputy Commissioner's term of office, such Deputy Commissioner may continue in office until the entry upon office of such a successor. A Deputy Commissioner appointed to a term of office after the  commencement  of  such  term  may  serve  under  such appointment only for the remainder of such term.

. . .

(4) The Deputy Commissioner shall perform such duties and exercise such powers as the Commissioner shall from time to  time  assign  or  delegate.   <u>The  Deputy  Commissioner</u>

19

> shall be Acting Commissioner of the Administration during
> the absence or disability of the Commissioner and, unless
> the President designates another officer of the
> Government as Acting Commissioner, in the event of a
> vacancy in the office of the Commissioner.

42 U.S.C. § 902 (emphasis added).  Thus, although the portion of Section 902 governing the Commissioner includes an express removal for cause provision, see 42 U.S.C. § 902(a)(3), the corresponding provision in the portion of Section 902 involving the Deputy Commissioner lacks any such language, see 42 U.S.C. § 902(b)(2). Notably, the Supreme Court has cautioned that a statute must expressly place limits on the President's authority to remove executive agency heads at will.  See Collins, ___ U.S. at ___, 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain plain language to take [that power] away.").

Second, the removal provision explicitly applies only to "[a]n individual serving in the office of Commissioner," 42 U.S.C. 902(a)(3) (emphasis added).  Thus, by its very terms, Section 902(a)(3)'s removal provision does not apply to an individual serving in the office of the Acting Commissioner.

Third, Section 902(b)(4) expressly accords the President the power to "designate[] another officer of the Government as Acting Commissioner" other than the Deputy Commissioner in the event of a vacancy in the office of Commissioner.  42 U.S.C. § 902(b)(4) (emphasis added).  That broad authority to designate any other

20

"officer of the Government" as Acting Commissioner during a vacancy further supports the view that the removal restriction applicable to the office of Commissioner does not apply in the same manner to the office of Acting Commissioner.

Moreover, the cases upon which Plaintiff relies as holding that Acting Commissioners enjoy removal protection (see Docket Entry 21 at 7 (citing <u>Sylvia</u>, <u>Albert</u>, <u>Tafoya</u>, and <u>Dante</u>)), all addressed that matter <u>in the procedural posture of a motion to dismiss for lack of standing</u>, see <u>Sylvia A.</u>, 2021 WL 4692293, at *3; <u>Albert</u>, 2021 WL 3424268, at *3; <u>Tafoya</u>, 2021 WL 3269640, at *5; <u>Dante</u>,2021 WL 2936576, at *5. Those courts found, at the threshold stage of a standing-based motion to dismiss, that Section 902(a)(3)'s language "[a]n <u>individual serving</u> in the office of Commissioner" <u>could</u> encompass the Acting Commissioner in the removal for cause provision. <u>Id.</u>

In contrast, cases addressing the <u>merits</u> of <u>Seila Law/Collins</u> claims have found that Section 902(a)(3) does <u>not</u> limit the authority of the President to remove an Acting Commissioner, and that then-Acting Commissioner Berryhill's appointment of the deciding ALJ precluded any possible link between Section 902(a)(3)'s unconstitutional removal provision and any alleged harm to the plaintiff. See <u>Standifird v. Kijakazi</u>, No. 20CV1630, 2021 WL 5634177, at *4 (S.D. Cal. Dec. 1, 2021) (unpublished) (recommendation) ("Because an Acting Commissioner does not have the

same removal restriction as the Commissioner and because [the] ALJ [] was properly appointed, [the p]laintiff's argument is not persuasive . . . ."); Alice T. v. Kijakazi, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021) (unpublished) ("[T]he ALJ's decision in this case was issued on July 17, 2019, one month after [then-Commissioner Andrew] Saul took office. The ALJ who decided [the p]laintiff's case was appointed by then-Acting Commissioner [Nancy] Berryhill, who could be removed from that office at the President's discretion."); Lisa Y. v. Commissioner of Soc. Sec., ___ F. Supp. 3d ___, ___, Civ. No. C21-5207, 2021 WL 5177363, at *5 n.1 (W.D. Wash. Nov. 8, 2021) ("[The Commissioner] correctly contends [that Nancy] Berryhill, as Acting Commissioner, was properly appointed and not subject to § 902's removal clause."); Boger v. Kijakazi, No. 1:20CV331, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021) (unpublished) ("Indeed, [the p]laintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the] ALJ [in question] was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion." (citing 42 U.S.C. § 902(b)(4), Collins, ___ U.S. at ___, 141 S. Ct. at 1783, and Eaton, 169 U.S. at 343)).

This Court, addressing Plaintiff's Seila Law/Collins challenge on its merits, should follow Standifird, Alice T., Lisa Y., and Boger, and find that, because then-Acting Commissioner Nancy

Berryhill appointed the ALJ who issued the decision denying Plaintiff's claims, and the President may remove Acting Commissioners at will, the unconstitutional removal provision in Section 903(a)(3) did not impact the ALJ's decision, and Plaintiff's challenge under <u>Seila Law/Collins</u> thus fails.

b. <u>Impact on ALJ's Decision</u>

Next, the Acting Commissioner maintains that, even if Acting Commissioners remained subject to Section 903(a)(3)'s removal for cause provision, Plaintiff's <u>Seila Law/Collins</u> argument would still fall short, because he failed to demonstrate any actual harm arising from Section 902(a)(3)'s unconstitutional removal provision. (<u>See</u> Docket Entry 17 at 11.) In that regard, the Acting Commissioner asserts that:

> [U]nlike Appointments Clause defects, where the presiding official does not enjoy proper authority to occupy the office, *see Lucia v. SEC*, 138 S. Ct. 2044 (2018), agency action is not *per se* invalid simply because it can be traced back to an official subject to an unconstitutional *removal* protection. Rather, under *Collins*, where an agency official is properly appointed, there can be no claim that he "exercise[d] . . . power that he did not lawfully possess." *Collins*, 141 S. Ct. at 1788; *see also id.* at 1788 n.23 ("the unlawfulness of a removal provision does not strip an official of the power to undertake the other responsibilities of his office"). Thus, "there is no reason to regard any of the actions taken" by officials with tenure protection during this period "as void." *Id.* at 1787 (emphasis added); *see also id.* at 1793 (Thomas, J., concurring) (where officials were properly appointed, there is "no barrier to them exercising power").
>
> *Collins* teaches, therefore, that actions taken by properly appointed officials — which include both the ALJ who presided over Plaintiff's claim (whose appointment

23

was ratified by an Acting Commissioner without tenure
protections) and the Commissioner who occupied the office
when the ALJ issued the decision (appointed by the
President with advice and consent of the Senate) — are
not void.  The properly appointed ALJ had full authority
to make decisions on benefits claims and the properly
appointed Commissioner had full authority to carry out
the responsibilities of his office, including
promulgating regulations.

Relief is available in removal challenges only where the
alleged injuries are caused by officials subject to the
challenged removal restrictions, and where those
restrictions themselves "inflicted compensable harm" upon
plaintiffs. *Id.* at 1789. . . .  To obtain a rehearing on
separation of powers grounds, in other words, Plaintiff
must show that Section 902(a)(3)'s removal restriction
somehow caused the denial of his benefits claim.

(Docket Entry 17 at 12-13 (internal brackets and stray period

omitted).)

Plaintiff counters that argument by urging that, although

"*Collins* did not involve a government actor's exercise of power

that the government actor did not lawfully possess[, s]ee *id.*, at

1788[,] . . . neither the ALJ nor the Appeals Council here had a

lawful delegation of authority under which to adjudicate and decide

this disability claim."  (Docket Entry 21 at 8.)  According to

Plaintiff, "[t]hat harm from the constitutional violation should be

presumed here without the need for strict causation is supported by

other cases in addition to *Collins*" (id.), and points the Court to

cases "decided in the Appointments Clause context" (id.) holding

"that when structural constitutional claims involving separation of

powers are concerned, an individual need not show direct prejudice

24

to their disability claim and instead such harm is presumed" (id. at 8-9 (citing Carr v. Saul, ___ U.S. ___, ___-___, 141 S. Ct. 1352, 1356-62 (2021), Probst v. Saul, 980 F.3d 1015, 1023 (4th Cir. 2020), and Landry v. Fed. Deposit Ins. Co., 204 F.3d 1125, 1131 (D.C. Cir. 2000))).

Unlike Appointments Clause cases, where courts have found the very authority under which a government official has acted unconstitutional, see, e.g., Carr, ___ U.S. at ___, 141 S. Ct. at 1356-62; Probst, 980 F.3d at 1023, the unconstitutional removal provision at issue here did not impact then-Commissioner Saul's ability to carry out the duties of his office. As another court recently explained:

> [The p]laintiff's argument is similar to arguments the plaintiffs raised and the [United States Supreme] Court rejected in Seila Law and Collins. First, like the plaintiffs in Seila Law, [the p]laintiff here argues § 902(a)(3)'s removal provision automatically renders all agency action unconstitutional. The [Supreme] Court in Seila Law rejected such an argument[,] observing one section of a statute may violate the Constitution without rendering the entire act void. Seila Law, 140 S. Ct. at 2209. The [Supreme] Court stated the removal limitation of the CFPB Director is the only defect and removal of the defect removes the constitutional violation. The [Supreme] Court concluded the removal limitation was severable because the CFPB is capable of functioning independently of the infirm removal clause. Id. [] ("The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction. Those provisions are capable of functioning independently, and there is nothing in the text or history of the Dodd-Frank Act that demonstrates Congress would have preferred no CFPB to a CFPB supervised by the President."); see also [id.] at 2245.

25

. . .

> The Supreme Court in <u>Collins</u> also rejected the argument
> an invalid removal provision rendered the FHFA's actions
> void from the outset. The Supreme Court stated there was
> "no reason to hold that the third amendment [to the
> agreement between the FHFA and the Department of
> Treasury] must be completely undone." <u>Collins</u>, [141 S.
> Ct.] at 1788. The <u>Collins</u> Court further stated
> "[a]lthough the statute unconstitutionally limited the
> President's authority to remove the confirmed Directors,
> there was no constitutional defect in the statutorily
> prescribed method of appointment to that office. As a
> result, there is no reason to regard any of the actions
> taken by the FHFA [challenged on appeal] as void." [<u>Id.</u>]
> at 1787. Accordingly, the argument the SSA's actions
> here are either void *ab initio* or became void at some
> later point due to § 902(a)(3)'s removal clause is not
> supported by either <u>Seila Law</u> or <u>Collins</u>.

<u>Lisa Y.</u>, ___ F. Supp. 3d at ___, 2021 WL 5177363, at *6–7 (internal
footnote, citation, and stray parenthesis and period omitted); <u>see
also</u> <u>Robinson v. Kijakazi</u>, No. 1:20CV358, 2021 WL 4998397, at *3
(W.D.N.C. Oct. 27, 2021) (unpublished) ([The p]laintiff . . .
offers no evidence to show that there is a nexus between the
unconstitutional removal restriction and the denial of his
application for disability benefits[ and ] simply argues that all
actions taken by the Commissioner are void due to the
unconstitutional removal provision. However, <u>Collins</u> expressly
rejects this view." (internal citation omitted)).

Notably, cases to the contrary addressed the much less onerous
issue of whether the plaintiff had <u>standing</u> to assert his or her
<u>Seila Law/Collins</u>-based claim and did not reach the merits of the
matter. See <u>Dixie C. v. Kijakazi</u>, No. 3:21CV764, 2021 WL 4822838,

26

at *6 (N.D. Tex. Sept. 20, 2021) (unpublished) ("[B]ecause [the p]laintiff has established both traceability and redressability for the purposes of standing, the [c]ourt has standing to hear [the p]laintiff's constitutional claim." (emphasis added)), recommendation adopted, 2021 WL 4820764 (N.D. Tex. Oct. 15, 2021) (unpublished); Sylvia A., 2021 WL 4692293, at *4 ("The [c]ourt finds that [the p]laintiff's separation-of-powers claim is both traceable and redressable such that she has standing to pursue it. Thus, all of [the p]laintiff's claims should proceed to briefing on the merits." (emphasis added)); Albert, 2021 WL 3424268, at *5 ("Because [the] plaintiff has standing to bring his constitutional claim, [the Commissioner]'s motion to dismiss is denied." (emphasis added)); Tafoya, 2021 WL 3269640, at *3 ("While ultimately, the righteousness *vel non* of [the plaintiff's] arguments on the merits may gain [her] little, if anything, the question presently before [the court] is one of standing, and thus does not implicate the merits." (footnote omitted) (emphasis added)).[10]

---

[10] Cases exist to the contrary on the standing issue. See Helms v. Commissioner of Soc. Sec., No. 3:20CV589, 2021 WL 5710096, at *3 (W.D.N.C. Dec. 1, 2021) (unpublished) ("The [c]ourt finds that it is implausible that the Commissioner's protection from removal from office, whether constitutional or not, could have affected [the] ALJ[ ]'s decision or any other aspect of the administrative litigation in a material way. Because [the p]laintiff has not shown that she was in any way injured by the removal protection provision, she does not have standing to litigate its constitutionality."); Catherine J.S.W. v. Commissioner of Soc. Sec., No. 3:20CV5602, 2021 WL 5276522, at *8 (W.D. Wash. Nov. 12, 2021) (unpublished) ("Because [the p]laintiff has not shown any compensable harm fairly traceable to the actions of former Commissioner [Andrew] Saul, . . . the [p]laintiff's situation is distinguishable from the plaintiff's claims in Collins; [the p]laintiff has failed to establish standing . . . ."); Amanda B. v. Commissioner, Social Security Administration, No. 3:20CV434, 2021 (continued...)

Indeed, in two such cases, the courts expressed doubt that the plaintiffs' Collins-based claims could succeed on the merits:

> The outcome of Collins is even less auspicious for [the] plaintiff's substantive claim. The [Supreme] Court there rejected the appellant's argument that the actions of the Director of the FHFA of which appellant complained were void:
>
>> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.
>
> Collins, 141 S. Ct. at 1787 (emphases in original). Accordingly, "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office," including implementing the provision of which the appellant complained. Id. at 1788 n.23. It thus may well be that, even if the removal provisions of the [] Act are unconstitutional, the [SSA]'s ALJs still had authority to issue disability determinations.

Tafoya, 2021 WL 3269640, at *3 n.6; see also Dante, 2021 WL 2936576, at *5 ("Th[e] rationale [in Collins] appears to undermine [the p]laintiff's position that the Commissioner acted outside his constitutional authority when he delegated authority to the ALJ to decide [the p]laintiff's disability claim. But, curiously, the

    [10](...continued)
WL 4993944, at *9 (D. Or. Oct. 26, 2021) (unpublished) ("[The p]laintiff . . . does not allege the SSA Commissioner took any action that is in any way related to the ALJ's decision or the decision by the Appeals Council."); Brinkman v. Kijakazi, No. 2:21CV528, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) (unpublished) ("Because [the p]laintiff offers nothing that traces the decision by the ALJ . . . to any alleged injurious conduct by the SSA Commissioner, [the plaintiff] has not demonstrated traceability and her constitutional violation claim fails for lack of standing.").

28

[Supreme] Court's analysis in <u>Collins</u> also supports a finding that [the p]laintiff has <u>standing</u> to assert a constitutional claim under this <u>now-questionable</u> theory." (italics omitted, underscoring added)). Thus, cases decided in the standing context do not provide a basis for the Court to find actual harm to Plaintiff arising from Section 902(a)(3)'s removal provision.

Plaintiff next argues "that President Biden wished to terminate Commissioner Saul immediately upon assuming the Presidency" (Docket Entry 21 at 11 (citing OLC Op. at *1)), and notes that "[t]he day after the [Department of Justice] issued [the OLD Op.] in the wake of *Collins* confirming that Mr. Saul could be removed from office by the President, President Biden immediately did so" (<u>id.</u> (citing <u>Tafoya</u>, 2021 WL 3269640 at *3)). Plaintiff additionally quotes from a White House statement regarding the dismissal of Commissioner Saul, indicating that Commissioner Saul "'undermined and politicized Social Security disability benefits'" and "'reduced due process protections for benefits appeals hearings.'" (<u>Id.</u> (citing https://federalnewsnetwork.com/people/ 2021/07/biden-fires-saul-as-ssa-commissioner).) Plaintiff thus argues that "President Biden's concerns about [Commissioner] Saul's policy actions went to the very fundamentals of the entire disability adjudication process," but that the unconstitutional removal provision prevented President Biden from removing Commissioner Saul. (<u>Id.</u> at 12.)

29

That argument misses the mark. Another district court addressed and rejected such an argument:

> In her reply brief, [the p]laintiff argues "[Commissioner] Saul's actions, under constitutional authority or not, have caused specific harm by undermining, politicizing and reducing due process protections to [the p]laintiff's claims." This argument that there is a possibility § 902(a)(3) harmed [the p]laintiff fails to recognize the significant difference between the agency action in Collins and the SSA action here.
>
> In Collins, the Directors of the FHFA adopted an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which [the] plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. Id. at 1774. The plaintiffs in Collins thus had an identifiable basis to contend that[,] but for the unconstitutional removal provision, the President may have removed and appointed a different Director who would have disapproved of the adoption (or implementation) of the Third Amendment. See id. at 1789.
>
> In contrast, there is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner. [The p]laintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. [The p]laintiff thus fails to show how or why § 902(a)(3)['s] removal clause possibly harmed her.

Lisa Y., ___ F. Supp. 3d at ___, 2021 WL 5177363, at *7 (internal citation omitted); see also id. at *8 ("[A] conclusory allegation that due process was denied is not sufficient to raise a colorable constitutional claim." (citing Hoye v. Sullivan, 985 F.2d 990, 992 (9th Cir. 1992)); Shaun A. v. Commissioner of Soc. Sec., Civ. No.

C21-5003, 2021 WL 5446878, at *5 (W.D. Wash. Nov. 22, 2021) (unpublished) ("[The p]laintiff's reference to an unnamed White House official's justification for Commissioner Saul's removal [does not] indicate that [the p]laintiff was harmed. . . . . Although a representative of the President suggested that Commissioner Saul was removed from office in part because he had undermined, politicized, and 'reduced due process protections for benefits appeals hearings,' this statement does not establish the existence of a due process violation and [the p]laintiff has failed to identify one."). Similarly, Plaintiff here has not pointed the Court to any "new regulations, agency policies or directives Commissioner Saul installed that may have affected h[is] claims," Lisa Y., ____ F. Supp. 3d at ____, 2021 WL 5177363, at *7. (See Docket Entries 15, 21.)

Plaintiff's argument that the unconstitutional removal provision prevented President Biden from removing Commissioner Saul earlier fails for an additional reason, as well-explicated by another district court:

> Plaintiff contends former Commissioner Saul's "unconstitutional removal protection, which clearly impeded President Biden in removing [him] prior to the Supreme Court's resolution of Collins [] tainted the [SSA]'s resolution of [the plaintiff's] case." One obvious fallacy with this argument is that President Biden did not take office until January 20, 2021 — more than two months after the Appeals Council denied review of the ALJ's decision — and there is no evidence that Mr. Biden's predecessor ever sought to remove his own appointee from office. There is no causal connection

31

> between the allegedly unconstitutional removal protection
> and the ALJ's adverse decision.

_Alice T._, 2021 WL 5302141, at *18; _see also_ _Alice F. v._
_Commissioner of Soc. Sec._, Civ. No. C21-5028, 2021 WL 5564429, at
*3 (W.D. Wash. Nov. 29, 2021) (unpublished) (noting that the
plaintiff "challenges decisions that all occurred during
Commissioner Saul's tenure," but that "President Trump appointed
Commissioner Saul, and [the p]laintiff presents nothing showing he
was possibly harmed by § 902 because President Trump desired or
directed a result that differs from the Commissioner's final
decision but was stymied by § 902."). Likewise, in this case, the
Appeals Council denied Plaintiff's request for review of the ALJ's
decision on October 14, 2020 (_see_ Tr. 1), over three months before
President Biden took office, and thus Plaintiff cannot show any
causal link between Section 902(a)(3)'s unconstitutional removal
provision and the ALJ's denial decision in his case.

In short, Plaintiff's constitutional claim based on _Seila Law_
and _Collins_ lacks merit.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision
finding no disability be affirmed, that Plaintiff's Motion for
Judgment on the Pleadings (Docket Entry 14) be denied, that

32

Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 9, 2021

Case 1:20-cv-01124-CCE-LPA   Document 22   Filed 12/09/21   Page 33 of 33